OPINION OF THE COURT
Marcy L. Kahn, J.
This case involving child sexual abuse committed by an adolescent raises issues of the Supreme Court’s jurisdiction to resolve by guilty plea charges involving a continuous offense spanning defendant’s infancy and adulthood, charges underlying a juvenile delinquency finding, and charges for which defendant may be prosecuted as an adult. Also presented is a question of a defendant’s eligibility for youthful offender treatment under CPL 720.10 (3) (i), where sodomy in the first degree is committed by a juvenile/adolescent who has himself been a victim of child sex abuse.
Background
Defendant Victor J. was charged in a six-count indictment with one count of course of sexual conduct against a child in the first degree (Penal Law § 130.75 [1]), four counts of sodomy in the first degree (Penal Law § 130.50 [3]), and one count of endangering the welfare of a child (Penal Law § 260.10 [1]). The charges arose from incidents commencing when defendant was 13 years old and the victim was four years old, and continuing until defendant was 17 years old and the victim was seven years old. During those years, the victim was regularly brought to defendant’s home for babysitting by defendant’s mother. The incidents occurred when defendant’s mother left the victim in defendant’s sole care while she left the house to run errands.
The case was originally assigned to Family Court but was later transferred to Supreme Court. Shortly thereafter, defendant was evaluated for treatment by Mary Vince, M.D., at the Sexual Behavior Clinic of the New York State Psychiatric *751 Institute (NYPI). During the course of that evaluation, defendant denied that he had ever been the victim of sexual abuse.
Prior to receiving this court’s ruling on various pretrial issues, defendant entered a guilty plea to the entire indictment. The matter was thereafter adjourned for the parties’ submissions relating to the defendant’s eligibility for youthful offender status, the parties’ positions on sentence and other matters.
Defendant’s Guilty Plea
Defendant fully allocuted to each count in the indictment, acknowledged his guilt and indicated his awareness of the consequences of his plea. The court made no promise with respect to the sentence, but agreed to consider granting defendant youthful offender status. Although no mention of the People’s position on youthful offender status was placed on the record at that time, during an off-record, chambers conference with the court and defense counsel earlier that day, the Assistant District Attorney had suggested that, if defendant had himself been a victim of prior sexual abuse, the People would likely not oppose a finding that defendant receive youthful offender treatment. Pursuant to the Sex Offender Registration Act (Correction Law art 6-C [SORA]), at the time his plea was entered, defendant was certified as a sex offender. (Correction Law § 168-d.)[1]
Postplea Developments
In the course of postplea interviews with defendant conducted by Jennifer Rabe, C.S.W., of the court’s Forensic Psychiatric Clinic at Bellevue Hospital; by Dr. Vince and Meg Kaplan, Ph.D., of NYPI; by Supervising Probation Officer (S.P.O.) Franklin Hurd; and with his therapist, Ms. Paula Getzfeld of PEGS, defendant revealed that when he was 12 years old, he had been sexually abused for approximately one year by a trusted family friend, who had threatened him if he were to disclose the abuse to anyone. All four of these trained evaluators credited defendant’s detailed report of this abuse. Defendant further reported to S.P.O. Hurd that both his mother and his sister had been in abusive relationships, necessitating the family’s move from Puerto Rico to New York.
Based on her own examination and interview of defendant, Ms. Rabe opined that defendant’s behavior appeared to have *752 been related to his own sexual abuse, rather than to a pattern of sexual attraction to young boys, and she recommended that he be permitted to continue with his treatment.
Drs. Vince and Kaplan reported that psychometric testing of defendant revealed that he did not endorse any sexual interest in children. They recommended that defendant participate in NYPI’s Sexual Behavior Clinic group therapy program in addition to the individual counseling sessions he had been attending there with Dr. Vince.
Officer Hurd also interviewed defendant’s therapists and learned that he was progressing well in therapy and was remorseful for his conduct. S.P.O. Hurd recommended that youthful offender status be granted for defendant, a first offender, and that the court impose a sentence of probation with the special conditions that defendant continue to receive individual therapy through PEGS and sexual behavior therapy through NYPI.
The prosecution and defense also submitted written memoranda concerning defendant’s eligibility for youthful offender treatment. Despite their earlier suggestion that they would not oppose a finding that defendant was an “eligible youth” within the meaning of CPL 720.10 (3) (i) if he himself had been a victim of prior sexual abuse, the People vigorously opposed a youthful offender finding.
' The court received oral and written victim impact statements from the parents of the victim, urging that defendant receive a lengthy, adult State prison sentence. The court subsequently received reports from Ms. Getzfeld and Dr. Vince, each advising that defendant was progressing well in treatment.
I then advised the parties that with respect to the issue of whether or not defendant’s prior sexual victimization constituted mitigating circumstances within the meaning of CPL 720.10 (3) (i) for the purpose of determining his eligibility for youthful offender status, I would be considering, and would entertain their views on, the information and conclusions contained in Earl F. Martin and Marsha Kline Pruett, The Juvenile Sex Offender and the Juvenile Justice System (35 Am Grim L Rev 279 [1998] [hereinafter Martin and Pruett]).[2]
Additionally, I raised with the parties, sua sponte, my concern that thére was an issue as to this court’s subject mat *753 ter jurisdiction over certain counts in the indictment, as defendant was an infant at the time he committed the sodomies charged in counts two, three and five, and when he began committing the crimes charged in counts one and six, and none of these crimes are designated “juvenile offenses” (see CPL 1.20 [42]; Penal Law § 10.00 [18]). I also sought the parties’ views on this issue, as well as with respect to a remedy, in the event the court had no jurisdiction over those counts, noting an apparent gap in the law created by provisions for pleas taken by juvenile offenders (CPL 220.10 [5] [g]) and for convictions after trial of those not criminally responsible by reason of infancy (CPL 310.85). Finally, I solicited the parties’ positions on whether or not the jurisdictional issues were subject to waiver. In his response, defendant advised that he was waiving any jurisdictional issues in the case.[3]
Analysis
I. Supreme Court’s jurisdiction to determine defendant’s criminal responsibility for a continuing offense which commences prior to the age of 16 and continues after defendant’s 16th birthday
It is undisputed that defendant began committing the acts underlying counts one and six (course of sexual conduct against a child in the first degree [Penal Law § 130.75 (a) (renumbered as subdivision [1] eff Feb. 1, 2001)] and endangering the welfare of a child [Penal Law § 260.10 (1)], respectively) when he was less than 16 years old and continued committing them after his 16th birthday. An issue thus arises as to whether defendant can be prosecuted as an adult for these offenses.
Pursuant to Penal Law § 30.00 (1), a person less than 16 years old is not criminally responsible for his or her conduct. A “juvenile delinquent” is defined as a person more than seven years of age and less than 16 who has committed an act that would constitute a crime if committed by an adult and who is not criminally responsible by reason of infancy. (Family Ct Act § 301.2 [1]; Penal Law § 30.00.)
In an analogous circumstance, Federal courts have observed that the Federal Juvenile Delinquency Act (18 USC §§ 5031- *754 5042) does not prohibit the prosecution as an adult of an individual who first became involved in a criminal conspiracy while a minor. In United States v Cruz (805 F2d 1464, 1477 [11th Cir 1986], cert denied 481 US 1006 [1987]), the court reasoned that neither logic nor judicial efficiency would be served by bifurcating into two prosecutions a conspiracy spanning an individual’s minority and adulthood, and that the entirety of the criminal conduct could be tried in adult proceedings. (See also United States v Spoone, 741 F2d 680 [4th Cir 1984], cert denied sub nom. Bates v United States, 469 US 1162 [1985].)
While research reveals no case law addressing this issue in New York, the reasoning applied in Cruz (supra) is persuasive here. Bifurcation of the prosecution of the continuing offenses charged in counts one and six would be as ill-conceived in this case as in Cruz. Certain portions of each charge would have to be tried in the Family Court, while other portions would necessarily remain in the Supreme Court. The result would be confusing and possibly contradictory, and would needlessly prolong the litigation.
Furthermore, a crime which is commenced in infancy but continues into majority may properly be treated as a crime committed by an adult. (See United States v Wong, 40 F3d 1347, 1365-1366 [2d Cir 1994], cert denied 516 US 870 [1995] [conviction for RICO continuing crimes committed pre- and post-18th birthday upheld, discussing concept of contract “ratification”].) In Wong, the Second Circuit upheld an adult RICO prosecution of defendants who began committing acts while they were juveniles and continued to do so upon attaining majority. Analogizing the defendants’ participation in the conspiracy to the ratification by an adult of a contract negotiated while a minor, the court held that a defendant may “ratify” his premajority involvement in a conspiracy by continuing to participate in it after attaining adulthood. (40 F3d, at 1365-1366.)
As was true of the criminal behavior in Wong (supra), the crimes charged in counts one and six here are continuing crimes, both charged here based upon a pattern of sexual conduct toward a child by the same person over a period of time. (See Donnino, Practice Commentary, Penal Law art 130, McKinney’s Cons Laws of NY, Book 39, at 415.) Defendant’s continued involvement in these offenses after reaching his 16th birthday demonstrates his ratification of the conduct as an adult. Thus, this court has subject matter jurisdiction over counts one and six.
*755 II. Defendant’s criminal responsibility for offenses committed prior to the age of 16 (counts two, three and five)
[Omitted for official publication purposes.][4]
III. Defendant’s criminal responsibility for offenses committed subsequent to the age of 16 (counts one, four and six)
As defendant was more than 16 years old when he committed the crimes charged in counts one, four and six, he may be held responsible as an adult for these crimes. (Penal Law § 30.00.) Before imposing sentence, however, pursuant to the terms of defendant’s plea of guilty, the court was first required to determine whether defendant was an “eligible youth” for purposes of deciding whether he was entitled to the benefit of youthful offender treatment.
Notwithstanding their earlier suggestion to the court and to defense counsel, the People opposed a finding that defendant be deemed an “eligible youth.” Citing People v Garcia (84 NY2d 336 [1994]), they argued that prior sexual victimization suffered by a defendant does not bear directly upon the manner in which a sexual crime is committed and, thus, does not qualify as a mitigating circumstance within the meaning of CPL 720.10 (3) (i). The People also characterized defendant’s report of prior victimization as unreliable, as having been reported only after his counsel was advised that prior victimization might be seen as a mitigating circumstance for purposes of determining defendant’s youthful offender eligibility.
Defendant asserted that his prior sexual victimization, visited upon him by a close family friend just prior to his commission of the instant offenses, had been undisclosed previously due to threats from the abuser, and in any case bears directly upon the manner in which his crimes were committed.
A youth who is eligible for youthful offender treatment is a person between the ages of 16 and 19 at the time of the commission of the charged crime. (CPL 720.10 [1].) A youth is not eligible for youthful offender treatment if the conviction to be replaced by the youthful offender finding is for first degree sodomy. (CPL 720.10 [2] [a].) Nonetheless, such a youth is an “eligible youth” if the court determines that there exists “mitigating circumstances that bear directly upon the manner in which the crime was committed.” (CPL 720.10 [3] [i].)
In People v Garcia (supra), the Court addressed the scope of the analogous provisions of Penal Law § 70.25 (2-b), requiring a sentencing court to impose consecutive sentences where a defendant is convicted of a violent felony offense committed after *756 arraignment and while released on recognizance or bail but committed prior to sentencing on the pending felony charge, unless the court determines that there exist “mitigating circumstances that bear directly upon the manner in which the crime was committed.” There the Court observed that the provision for consecutive sentences was designed to circumscribe, rather than eliminate, the court’s sentencing discretion. (Garcia, supra, at 341.) It also observed that factors “ ‘directly’ flowing from and relating to defendant’s personal conduct while committing the crime qualify [as mitigating circumstances].” (Id., at 342 [citations omitted].) In rejecting the trial court’s finding that the defendant’s age, prior criminal history and drug abuse problem constituted such circumstances, the Court observed that such factors “generally * * * do not pertain to defendant’s direct manner in the commission of the crime.” (Id.)
In determining whether prior sexual victimization as a child, which was not involved in Garcia (supra), constitutes a factor “ ‘directly’ flowing from and relating to defendant’s personal conduct while committing the crime,” reference must first be made to the findings of social scientists in the study and treatment of juvenile sex offenders. (See Martin and Pruett, op. cit., at 282.) Although all criminal acts may stem from behavioral problems, these studies provide ample evidence that defendant’s criminal conduct derived directly from, and related expressly to, his prior experience as a child sex abuse victim.
An understanding of defendant’s conduct in this case begins with examination of its psychological origins. Of the several theories which have been advanced respecting the etiology of sexual deviance, the one which speaks most directly to this case suggests that adolescent offenders learn sexual deviance through their observations of adult offenders: “This model points to the physical and sexual abuse that most adolescent perpetrators encountered in their own lives as a set of events that they subsequently re-enact, viewing themselves as moving from the role of the child victim to that of the powerful perpetrator.” (Martin and Pruett, op. cit., at 289, citing Fay Honey Knopp, The Youthful Sex Offender: The Rationale and Goals of Early Intervention and Treatment, at 6, 9-10 [1985].) This theory is borne out by studies revealing that a history of sexual victimization is shared by many juvenile sex offenders, who seek a locus of control over their environment by recreating the abusive relationship, with themselves as the abuser: “This form of victimization may perpetuate what is commonly *757 known as the cycle of abuse; i.e., the observation that victims of sexual abuse often re-create their experiences later in their lives with themselves as the perpetrators. This pernicious childhood ordeal seems to be especially prevalent in the lives of juvenile child molesters. While the percentages vary across studies, there are numerous results indicating that molesters are sexually victimized to a greater extent than are other sex offenders and delinquents, a finding that has generally held in clinical experience as well. This correlation has been offered as a possible explanation for why juvenile child molesters report a desire to control their interpersonal relationships and act as the initiator of coercive associations versus being the one who is sought out by a third party.” (Martin and Pruett, op. cit., at 298-299 [footnotes omitted]; see also sources cited therein].)
In applying the foregoing model to the instant case, it is readily apparent that in abusing the victim, defendant may have been reenacting the trauma he suffered by mimicking the conduct of the adult who had abused him. One could say that it was almost as if the family friend were standing beside him as defendant committed the instant crimes, guiding his movements with respect to the victim who had replaced defendant in the abuse equation. It is extremely telling that the court’s own forensic social worker observed, in recommending a continuation of community-based treatment, “[h]is behavior appears related to his own history of sexual abuse rather than to a pattern of sexual attraction to young boys.”
This psychological dynamic is analytically distinct from the simple causation rationale found by the Court in Garcia {supra) to be insufficient to warrant a finding of mitigation, and sets the instant case apart from Garcia. In this light, defendant’s prior victimization does not constitute general and remote background information such as a history of drug abuse, but actually does directly flow from and relate to the defendant’s personal conduct while committing the crime. In any event, the Court did not purport to establish in Garcia a bright-line rule that a defendant’s background as a crime victim could never constitute a “mitigating circumstance[ ] that hearts] directly upon the manner in which the crime was committed” under CPL 720.10 (3) (i).
More enlightening than Garcia {supra) for resolution of the question before this court is People v Cruickshank (105 AD2d 325 [3d Dept 1985], affd sub nom. People v Dawn Maria C., 67 NY2d 625 [1986]). There, the 17-year-old defendant, convicted of first degree manslaughter in the shooting death of her father, *758 had been denied youthful offender treatment by the trial court. The Appellate Division, exercising its own discretionary powers to modify the sentence as unduly harsh or severe (CPL 470.15 [2] [c]; [6] [b]), vacated the conviction and granted the defendant youthful offender status pursuant to CPL 720.20 (1) (a), relying in no small measure upon the impact of child sexual abuse on the young offender and the court’s determination that her act of homicidal violence arose out of that history. Although the provisions of CPL 720.10 (3) here at issue governing eligibility were not applicable in Cruickshank, the Appellate Division’s rationale there is germane in this case: “the significant mitigating circumstances that defendant is a sexually abused child and that the crime of which she was convicted arose out of that fact. In addition to her own testimony regarding incidents of sexual abuse by her father, defendant offered uncontradicted expert psychiatric testimony at the trial, the Hughes hearing and the sentencing hearing that defendant’s conduct and symptoms, including her initial reluctance to fully reveal the details of the sexual abuse, were classic characteristics of a sexually abused child and of the rape trauma syndrome. These experts, while admitting that it is theoretically possible for an individual in defendant’s position to fabricate such a story, were of the opinion, based on their expertise and interviews with defendant, that she had not contrived the story * * * These mitigating circumstances establish that defendant’s act was not the cold and calculating product of a criminal mind, but the result of emotional trauma brought about through no fault of her own.” (105 AD2d, at 334-335 [citation omitted].) In the present case, as in Cruickshank, the defendant’s violent acts were a direct result of his earlier experience as a victim of child sexual abuse, specifically, a reenactment of that experience, and the result of emotional trauma not of his own making.
Addressing the People’s argument that defendant’s initial denial of prior victimization in this case should prompt this court to discredit defendant’s current claim of abuse, certainly a reluctance to report such victimization is not unusual. (See generally, People v Taylor, 75 NY2d 277 [1990] [discussing, inter alia, reluctance of child victims of sex offenses to report victimization].) Moreover, studies have indicated that the “dissociation, and disclosure [of prior sexual abuse] in and of itself may be traumatic.” (Karyn G. France and Stephen M. Hudson, The Conduct Disorders and the Juvenile Sex Offender, Juvenile Sex Offender 225, 229 [Howard E. Barbaree et al. eds 1993], *759 cited in Martin and Pruett, op. cit., at 298, n 105.) In addition, where the perpetrator is a trusted family friend, as was defendant’s abuser, the abuse is less likely to be disclosed due to a fear on the victim’s part that disclosure will result in harm to the victim or to other family members. As noted, defendant had also witnessed abuse suffered by other members of his family.
I find defendant’s claim of abuse credible in this case because it contains details which are supported by surrounding facts and circumstances, and because four different professionals, all of whom are trained to recognize fabrication of such claims, accepted defendant’s report as true.
For these reasons, I find that defendant’s prior victimization constitutes a factor “directly flowing from and relating to defendant’s personal conduct while committing the crime” and that, therefore, it constitutes a mitigating circumstance bearing directly upon the manner in which the charged crimes were committed. Accordingly, I deem Victor J. an “eligible youth” pursuant to CPL 720.10 (3) (i).
This finding does not conclude the court’s analysis, however, as it remains to be determined whether in the exercise of this court’s discretion, defendant should be adjudicated a youthful offender. (CPL 720.20 [1] [a].)
Although the statute does not specifically delineate the matters relevant to the trial court’s interest of justice determination, controlling appellate precedent has established that the factors to be considered include: “the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant’s prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant’s reputation, the level of cooperation with authorities, defendant’s attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life.” (People v Cruickshank, supra, 105 AD2d, at 334 [citations omitted].) In addition, the perpetrator’s expression of remorse for his misdeeds, or lack of same, has been cited as a factor to be considered in determining whether or not youthful offender status will be granted.[5]
In their belated opposition to the court’s discretionary award of youthful offender treatment and imposition of a probation *760 ary sentence in this case, the People asserted, inter alia, that defendant fits the DSM-IV definition of a pedophile and that clinical assessments to the contrary were based on inadequate testing. For the latter proposition, they relied upon the work of social scientists Judith V. Becker, Ph.D., and Meg S. Kaplan, Ph.D., in observing that self-reporting of progress or lack of progress by adolescent sex offenders is not as reliable as physical testing, such as by a penile seismograph. (See Judith V. Becker and Meg S. Kaplan, Cognitive Behavioral Treatment of the Juvenile Sex Offender, Juvenile Sex Offender, supra, at 265.)[6] The People also contended that if defendant were granted youthful offender status, the inapplicability of SORA to his case would place the community at unnecessary risk.
Examining the present case with the Cruickshank factors in mind, the court first notes that although defendant’s crime was indeed grave, it constituted a tragic reenactment of a crime once visited upon defendant when he was younger, and in that context, it is mitigated. Further, although defendant’s conduct was emotionally and psychologically damaging to the victim, their respective circumstances prohibit any further contact between them. Defendant has no prior history of offending or of committing violent acts. He has expressed remorse for his actions. He voluntarily entered psychological treatment and made positive progress in therapy for 18 months while the case was pending. Three different clinical teams have evaluated defendant and found that neither the community nor the complainant is in need of protection from defendant such that removal from the community is necessary. Significantly, his treating clinicians from the NYPI Sexual Behavior Clinic (including Dr. Kaplan, relied upon by the People) and the court’s forensic social worker at Bellevue Hospital have opined that defendant is not a pedophile. Both agencies, as well as the Department of Probation, have noted defendant’s cooperation with their *761 requirements, his positive prospects for rehabilitation, and have recommended that he receive youthful offender treatment and a probationary sentence. Implementation of SORA to assure the community’s protection appears unwarranted here.
Additionally, the withholding of youthful offender status would require defendant’s incarceration in an adult prison for a minimum of three to six years, almost certainly subjecting him to serious injury. According to Barbaree and Cortoni (op. cit., at 251), incarceration alone does not change the behavior of adolescent sex offenders. Long-term incarceration in an adult prison bodes poorly for an adolescent offender’s rehabilitation and will create the possibility that he will reoffend. Absent therapy, such incarceration will not resolve the offender’s primary problem, and in any event, prison is preferable only where rehabilitation is not viable. Psychological treatment, including assistance in developing self-control, shows greater promise as an effective means of ending the cycle of abuse in the long term, especially where, as here, treatment is to be court-mandated, judicially monitored and the subject of periodic reports to the court by defendant’s treating clinicians. (Id.) Professors Martin and Pruett explain: “Although the success of therapeutic intervention in dealing with these youth is as yet not adequately documented, the alternatives of locking these juveniles up and throwing away the key or returning them to their communities without any attempt at modifying their behavior are patently unacceptable. The juvenile justice system has the ability to intervene in the lives of these juveniles, and intervene it should. However, that intervention must have in mind the long-term goal of protecting the community by preventing further misconduct, and so far therapeutic intervention offers the only acceptable path to that outcome.” (Martin and Pruett, op. cit., at 314 [footnotes omitted].)
Of course, defendant must account for his crime. The victim’s family has understandably demanded stern punishment for defendant. Furthermore, the People have accurately relied upon Drs. Becker and Kaplan in arguing that psychological treatment of adolescent sex offenders generally ends at age 18 and that despite the availability of follow-up programs, participants frequently resist further treatment.
Here, however, defendant has sought treatment on his own, and NYPI has already agreed to permit defendant to continue in its program. Treatment will be mandated by the court, with any failure in compliance resulting in a jail or prison term. De *762 fendant will also be required to participate in judicially monitored community service and other productive activities while continuing to be law abiding.
In my view, the studies relied upon by the social scientists mentioned above, as well as the clinical assessments done of this defendant by his treating clinicians and by the court’s forensic social worker, clearly show that community-based rehabilitation of this adolescent is not only viable, but preferable to a mandatory State prison sentence. A youthful offender adjudication and a probationary sentence offer the greatest chance for ensuring defendant’s continued rehabilitation, without jeopardizing the safety of the victim or the community.
Accordingly, defendant’s conviction on counts one, four and six are replaced by youthful offender adjudications, a probationary sentence is imposed on each such count and a final order of protection is entered.[7]
Conclusion
Defendant is adjudicated a juvenile delinquent as to counts two, three and five. Defendant’s convictions on counts one, four and six are replaced by youthful offender adjudications. Defendant’s certification as a sex offender is withdrawn.
[Portions of opinion omitted for purposes of publication.]

. This court indicated that in the event defendant was adjudicated a youthful offender, it would withdraw the sex offender certification. (CPL 720.10 [4]; Correction Law § 168-a [1].)

. See George D. Marlow, From Black Robes to White Lab Coats: The Ethical Implications of a Judge’s Sua Sponte, Ex Parte Acquisition of Social and Other Scientific Evidence During the Decision-Making Process, 72 St John’s L Rev 291 (1998).

. Subject matter jurisdiction over a criminal offense cannot be acquired solely by waiver or consent, however. (People v Ford, 62 NY2d 275 [1984]; People v Patterson, 39 NY2d 288, 295-296 [1976], affd 432 US 197 [1977].) Nonetheless, I agreed to accept defendant’s waiver because, as indicated infra, this court has subject matter jurisdiction of every count of the indictment.

. The full text is published in People v Victor J., NYLJ, Nov. 20, 2000, at 27, col 1.

. Michael A. Corriere, Sentencing Children Tried and Convicted as Adults, 7 NY St Bar Assn Grim Just J [No. 1] 49, 52 (Summer 1999), citing People v Pinsonneault, 116 AD2d 849 (3d Dept), lv denied 67 NY2d 888 (1986).

. Other experts, however, have characterized such physical testing as ethically inappropriate, or at least, controversial. (See, e.g., Howard E. Barbaree and E.A. Cortoni, Treatment of the Juvenile Sex Offender within the Criminal Justice and Mental Health Systems [hereinafter Barbaree and Cortoni], Juvenile Sex Offender, supra, at 253, citing E.B. Saunders and G.A. Awad, Assessment, Management and Treatment Planning for Male Adolescent Sexual Offenders, 58 Am J Orthopsychiatry 571-579 [1988] [criticizing use of phallometric tests with juveniles due to absence of published studies demonstrating their reliability, validity or predictive power with respect to juveniles; difficulty in obtaining subject’s and parent’s consent to test; and ethical issues inherent in exposing boys to explicit deviant sexual acts]). It is uncontested that NYPI no longer funds Dr. Becker’s use of phallometric testing.

. Special conditions of probation on these counts were imposed by my order entered on December 20, 1999.