*207 OPINION OF THE COURT
Caesar D. Cirigliano, J.
On February 19, 1999, defendant pleaded guilty to sexual abuse in the first degree and was sentenced by this court to 1½ to 3 years’ incarceration. He is now before the court for a determination of his risk level pursuant to the Sex Offender Registration Act (Correction Law art 6-C [SORA]).
Pursuant to SORA, which embodies this State’s version of “Megan’s Law,” there are three designated risk levels: low risk (level one), moderate risk (level two) and high risk (level three [where the offender is deemed to be a “sexually violent predator”]) (see, Correction Law § 168-l [6]). In addition, SORA created a Board of Examiners of Sex Offenders (the Board) from within the Division of Parole which was directed and empowered to develop guidelines and procedures to assess the risk of a repeat offense by a sex offender and the threat posed to the public safety based upon, but not limited to, certain factors set forth in SORA. (See, Correction Law § 168-l [5].) In response, the Board developed guidelines with the assistance of a group of experts with diverse experience in dealing with sex offenders. (See, Risk Assessment Guidelines and Commentary [Nov. 1997] [the Guidelines]; People v Salaam, 174 Misc 2d 726; People v Ross, 169 Misc 2d 308; see also, Doe v Pataki, 120 F3d 1263.)
The Board created an objective risk assessment instrument (RAI) which it uses in arriving at an offender’s presumptive risk level. (See, Guidelines, at 3.) The instrument considers 15 risk factors and assigns a numerical value to the existence of certain circumstances[1] it has determined to be indicative of a risk of a repeat offense. These values are then totaled to arrive at the offender’s presumptive risk level. Where the total score is 70 points or less, the offender is presumptively level one; if more than 70 but less than 110 points, the offender is presumptively level two; and if more than 110, he is presumptively level three. The Board’s Guidelines also set forth overrides which automatically result in a presumptive risk level of three. (See, Guidelines, at 3-4.)
Prior to the release of an incarcerated sex offender, a member of the Board calculates the presumptive risk level and recommends same to the original sentencing court. Pursuant to the *208 1999 amendments to SORA,[2] the District Attorney must provide written notice of the risk level sought (Correction Law § 168-d [3]), and has the burden of proving the facts supporting such level by clear and convincing evidence. (Correction Law § 168-k [2].) With respect to such proof, the amendments provide that facts which were proven at trial or elicited during a plea allocution “shall be deemed established by clear and convincing evidence and shall not be relitigated.” (Correction Law § 168-k [2].) In addition, the court may consider “reliable hearsay.” (Ibid.)
In the instant case, the Board has recommended a risk level of three based on a risk factor score of 135 with no overrides. In doing so, the Board took into account a prior youthful offender adjudication for robbery in the second degree (30 points), committed 18 months prior to the instant offense (10 points), in which codefendants had stabbed at least two victims. Ten points were also assessed against the defendant for a failure to accept responsibility for the instant offense.
At the hearing held pursuant to Correction Law § 168-k, the People offered no evidence and the defendant, through assigned counsel, challenged these three assessments. Specifically, defendant challenged the Board’s consideration of his prior recent youthful offender adjudication as improper as a matter of law, arguing that the terms “prior crimes” and “prior offense” in the RAI cannot include a youthful offender adjudication because such is not considered a conviction for a crime.[3] This is apparently an issue of first impression under SORA.
Pursuant to CPL 720.20, upon determining that an eligible youth is a youthful offender, the court must direct that the conviction be deemed vacated and replaced by a youthful offender finding. Such an adjudication is not a judgment of conviction “for a crime or any other offense” (CPL 720.35 [1]), and the official records and papers of the case are declared confidential for most purposes. (CPL 720.35.) Thus, a youthful offender adjudication cannot be shown to affect a witness’s credibility. (People v Cook, 37 NY2d 591; Prince, Richardson on Evidence § 6-409 [Farrell 11th ed].)
*209 Be that as it may, the Board determined that the term “crimes” (and therefore presumably the term “offense”) as used in the RAI should include: “criminal convictions, youthful offender adjudications and juvenile delinquency findings.” (Guidelines, at 6.) The rationale of the Board was that, although a youthful offender adjudication is not a conviction for a crime, it is still a reliable indicator of wrongdoing and therefore should be considered in assessing an offender’s likelihood of reoffense and danger to public safety. (Ibid., citing People v Compton, 38 AD2d 788; cf. also, People v Cook, 37 NY2d 591, supra [underlying facts of a youthful offender adjudication can be used to impeach credibility].)
The issue thus becomes: is this administrative determination consistent with, or in conflict with, SORA and CPL article 720?
As indicated above, the Board was created by SORA as part of the Division of Parole. While CPL 720.35 seals youthful offender files for most purposes, there is an express exception contained therein with respect to the Division of Parole and Probation Departments (CPL 720.35 [2]), and based thereon youthful offender adjudications have been held to be an appropriate predicate to sustain a violation of probation. (People v Compton, 38 AD2d 788, supra.) Moreover, the Board was directed to develop guidelines to assess the risk of a repeat offense “based upon, but not limited to,” various criminal history factors. (Correction Law § 168-l [5]; cf., United States v Daniels, 929 F2d 128 [New York youthful offender adjudication may be considered in computing defendant’s criminal history for purposes of Federal sentencing guidelines].) In light of the fact that a repeat offender has elected to cast away his youthful offender fresh start (Matter of Pina v Hammock, 109 Misc 2d 980, affd on other grounds 89 AD2d 799; accord, United States v Holland, 26 F3d 26), the decision of the Board to take such adjudication into consideration is consistent with the legislative intent of SORA and not inconsistent with other statutory authority.[4]
From the court’s files, it appears that on February 26, 1998 the defendant and codefendant were charged pursuant to a criminal court complaint in which the complainant deposed that on January 19, 1998 the defendants, acting in concert, each raped her as the other stood guard at the door to the *210 bedroom with a knife. Thereafter, on February 19, 1999 the defendant pleaded guilty to sexual abuse in the first degree.[5] At no time, after being notified of this proceeding, has the defendant requested a hearing or made an offer of proof inconsistent with this recitation of the facts. Based thereon the court finds that the People have established by clear and convincing evidence both the fact of the rape and that the defendant was armed with a dangerous instrument (see, People v Sumpter, 177 Misc 2d 492; Guidelines, at 6 [usual rules of accessorial liability obtain]), as well as that defendant’s criminal history includes a recent prior violent felony.
The challenge to the 10 points for “failing to accept responsibility” is moot; even without these points, the defendant would remain at level three. Be that as it may, the court finds that the People have sustained their burden of proof with regard to this factor. The assessor states that when interviewed by the Department of Correctional Services, the defendant denied his guilt. The defendant has not denied this statement. (People v Ross, 169 Misc 2d 308, supra.).
Based on all of the foregoing, the court confirms the Board’s recommendation and finds the defendant to be a level three risk.

. Pursuant to the Guidelines, there must be clear and convincing evidence of such circumstance before the Board may take it into consideration. (Guidelines, at 4.)

. L 1999, ch 453, effective January 1, 2000, and applicable to persons convicted of an offense committed prior to such date and who, on such date, have not completed service of the sentence imposed therefor.

. Other than objecting to the assessment of points for failing to accept responsibility, defendant in no way disputed the assessor’s report that defendant denied lids guilt when he was interviewed by the Department of Correctional Services.

. Further support of this conclusion may be found in the fact that the 1999 amendments to SORA are silent with respect to this issue. Presumably, if the Guidelines (which were published in 1997) were inconsistent with the Legislature’s intent, this would have been remedied in the amendments.

. The codefendant pleaded guilty to rape in the second degree on the same date.