*471 OPINION OF THE COURT
Marcy L. Kahn, J.
This matter is before the court for a judicial determination of defendant’s duration of registration and level of notification pursuant to the Sex Offender Registration Act (SORA) (Correction Law § 168-n [1], [2]), based on his June 9, 1999 plea of guilty to one count of course of sexual conduct against a child in the first degree (Penal Law § 130.75 [1]) and one count of sodomy in the first degree (Penal Law § 130.50 [3]).[1] On October 4, 2005, this court received a risk assessment recommendation from the Board of Examiners of Sex Offenders[2] 3****pursuant to Correction Law § 168-Z (6), recommending that defendant be designated a level three sex offender.[3]
On November 3, 2005, this court held a hearing pursuant to Correction Law § 168-n (3). At the conclusion of the hearing, the court was required to designate defendant a “sexually violent offender” (Correction Law § 168-a [7] [b]), as the crimes of which the defendant stands convicted are both designated as “[s]exually violent offense [s]” (Correction Law § 168-a [3] [a] [i]) requiring lifetime registration (Correction Law § 168-h [2]). This court also rendered a determination designating defendant a level one sex offender. This written opinion further explains this court’s findings of fact and conclusions of law as set forth in its oral ruling, in conformity with Correction Law § 168-n (3).
*472 I. Background[4]
The instant charges arose from incidents commencing in February 1995, when defendant was 13 years old[5] and the victim was 4 years old, and continuing through March 31, 1998, when defendant was 17 years old and the victim was 7 years old. During those years, the victim’s mother regularly brought the younger child to defendant’s home for babysitting by defendant’s mother. The conduct at issue occurred when defendant’s mother left the victim in defendant’s sole care while she left the home to run errands.[6]
Defendant was arrested on the instant charges on April 21, 1998. The case was originally assigned to Family Court but was transferred to Supreme Court in May 1998. Following plea negotiations in another part of this court, in which the court discussed a youthful offender disposition involving a sentence of six months’ incarceration concurrent with five years’ probation, the case was sent to this part for a hearing pursuant to CPL article 65 (“Use of Closed-Circuit Television for Certain Child Witnesses”). On June 9, 1999, prior to receiving this court’s ruling on matters relating to the article 65 hearing, defendant entered a guilty plea to the entire indictment. In consideration of defendant’s guilty plea, the court promised only to consider the possibility of substituting a youthful offender finding at the time of sentence.[7] Defendant was then certified as a sex offender, pursuant to Correction Law § 168-d.
*473 Subsequently, six different clinical and forensic examiners advised the court that their examinations indicated that defendant Jusino had been sexually molested by a family friend while an adolescent.[8] (Court exhibits 7, 8, 9, 13.) Additionally, evaluation at defendant’s sex offender treatment clinic, the New York Psychiatric Institute Sexual Behavior Clinic (NYPI), revealed that on psychometric testing, defendant did not endorse any sexual interest in children. (Court exhibit 9 [letter and report from New York Psychiatric Institute, Sexual Behavior Clinic, dated July 27, 1999]; see Victor J., supra at 752.) The forensic social workers and psychiatrist at the Supreme Court’s forensic clinic opined that defendant’s conduct appeared to have been related to his own experience as a victim of sexual abuse, rather than to a pattern of sexual attraction to young boys. (Court exhibits 7, 13; see court exhibit 5.) These clinicians recommended that defendant continue with treatment, to which he had responded well. After evaluating those reports and reviewing defendant’s character references, the supervising probation officer recommended that defendant, as a first offender, be granted youth offender status and that a sentence of probation be imposed, requiring defendant to continue individual psychotherapy and sexual therapy. (Court exhibit 8 [Department of Probation presentence investigation report from Franklin Hurd, S.PO., dated July 16, 1999].)
On December 17, 1999, this court orally ruled that prior sexual abuse suffered by defendant constituted a mitigating circumstance which bore directly on the manner in which the crimes had been committed within the meaning of CPL 720.10 *474 (3) (i), justifying the vacation of defendant’s criminal convictions and his adjudication as a youthful offender. The court then vacated defendant’s convictions on counts one, four and six, and adjudicated him a youthful offender on each pursuant to CPL 720.20. Defendant was sentenced to five-year probationary terms on counts one and four, and to a three-year probationary sentence on count six, all to run concurrently. This court also vacated the prior certification of defendant as a sex offender. (CPL 720.35 [1]; see People v Floyd J., 61 NY2d 895 [1984] [youthful offender finding has practical and legal effect of a reversal].) With respect to counts two, three and five, the court, after a modified dispositional proceeding, found defendant a juvenile delinquent, and sentenced him to two concurrent probationary terms of two years. The court elaborated upon its ruling in its written decision in Victor J. (supra).
In the meantime, this court personally supervised defendant’s progress on probation. During the 43-month pendency of this case before this court and the prior justice to whom the case was assigned, defendant made significant academic and rehabilitative progress. As more fully detailed by this court in Victor J., defendant successfully underwent group counseling and treatment for his sexual behavioral problems at a prestigious institute dedicated to such treatment. Additionally, defendant continued his voluntary participation in individual psychotherapy treatment with a therapist in private practice. He cooperated with the Department of Probation, the court clinic and this court. Defendant also complied with additional conditions imposed by this court at the time of his plea, through which he demonstrated his remorse and his acceptance of responsibility for his actions. He also obtained his GED during this time.
Notwithstanding their preplea representation to counsel and the court, the People appealed the youthful offender adjudication and sentence. On May 8, 2001, the Appellate Division held that as a matter of law, that the prior sexual abuse suffered by the defendant did not constitute a mitigating circumstance within the meaning of CPL 720.10 (3) (i), and remitted the case to this court for resentencing. (People v Victor J., 283 AD2d 205 [1st Dept 2001], lv denied 96 NY2d 942 [2001].)
Upon remittitur of the case by the Appellate Division, defendant chose not to withdraw his previously entered plea, and was resentenced on December 5, 2001, in accordance with the Appellate Division’s decision and with the consent of the People, *475 as a first felony offender to concurrent indeterminate prison terms of 3 to 6 years on counts one and four, and to a concurrent one-year jail sentence on count six. The SORA certification was also reinstated. On October 4, 2005 the court received the Board’s risk assessment recommendation, along with notice that defendant was scheduled for conditional release from incarceration on December 3, 2005.
II. Findings upon Hearing
Pursuant to SORA, this court conducted a hearing on November 3, 2005, at which the State was represented by the Office of the New York County District Attorney, and the defendant, who waived his presence at the hearing,[9] was represented by his assigned counsel. At the hearing, this court reviewed the recommendations of the Board and the factors on which it was based, as set forth in its risk assessment instrument and case summary furnished to the court and parties; the court file in the case, including all prior proceedings and decisions of this court and the submissions on which they were based, including this court’s factual determinations set forth in Victor J.; transcripts of the plea and both sentencing proceedings; the victim impact statement; evaluative reports from the Department of Probation; clinical evaluations from defendant’s psychological and behavioral counselors; defendant’s criminal history; defendant’s inmate programmatic and disciplinary history; and the arguments of the parties advanced at the hearing. The prosecution was required to bear the burden of proving the facts supporting its proposed determinations by clear and convincing evidence. (Correction Law § 168-n [3].)
Based upon the credible evidence adduced at the hearing, and as set forth in the Board’s risk assessment instrument and in the Guidelines and Commentary (SORA Risk Assessment Guidelines and Commentary [Nov. 1997]) (Guidelines or Commentary), and pursuant to the statutory guidelines set forth in Correction Law § 168-Z (5), this court finds the following facts to have been established by clear and convincing evidence at the hearing.
A. Duration of Registration
This court is required to make a determination of the duration of defendant’s registration obligation. (Correction Law § 168-n.) Defendant stands convicted of course of sexual conduct *476 against a child in the first degree (Penal Law § 130.75 [1]) and sodomy in the first degree (Penal Law § 130.50 [3]). Both crimes are defined as “sexually violent offenses” (Correction Law § 168-a [3] [a] [i]). The parties agree, and the court concurs, that the fact of such convictions requires the court to designate defendant as a “sexually violent offender,” as that term is defined in Correction Law § 168-a (7) (b). He is therefore subject to lifetime registration. (Correction Law § 168-h [2].)
B. Risk Factors and Level of Notification
In addition, this court must also determine the offender’s risk and notification level, assessing the risk of reoffense by the defendant and the threat he is likely to pose to the public safety. In doing so, this court must apply the guidelines established in Correction Law § 168-Z (5), after receiving the Board’s recommendations which are to be based upon the same criteria. (Correction Law § 168-n.) In developing its recommendation, the Board utilizes a risk assessment instrument which it developed with the assistance of experts from diverse disciplines who deal with sex offenders. The instrument is designed to be used to assign certain point values to conduct or conditions which have been determined by the Board to be indicative of the potential for a person convicted of a sexual offense to reoffend. Each factor used by the Board in its risk assessment instrument will be addressed in turn.
Current Offense
1. Use of Violence
In assessing threats of violence, the court must determine what a victim, faced with the threat, feared would occur if he refused to comply with the demands of the offender. (Commentary at 7, citing People v Coleman, 42 NY2d 500, 505 [1977].) The facts here indicate that the defendant threatened to kill the victim with a toy gun and to throw him out of a window if he reported the incidents. The court finds that these threats were sufficient to place the victim, then aged four to seven years, in fear that he would be injured or killed if he did not acquiesce in the defendant’s conduct. The victim is found to have been compelled, through the threat of force, to suffer the sexual misconduct of the defendant. Nonetheless, defendant was never in fact armed with any dangerous instrument or weapon, nor did he inflict physical injury on the victim.
The parties agree that the defendant used forcible compulsion and that 10 points should be assessed for this factor. (10 points.)
*477 2. Sexual Contact with Victim
The defendant was convicted, upon his plea, to sodomy in the first degree, which involved physical contact between the defendant’s penis and the mouth of the victim who was less than 11 years old. The parties agree that 25 points should be assessed for this factor. (25 points.)
3. Number of Victims
There was a single victim in this case. The parties therefore agree that no points should be assessed for this factor. (0 points.)
4. Duration of Offense Conduct with Victim
Defendant engaged in a continuing course of sexual misconduct, from the time the defendant and victim were 13 and 4 years old, respectively, until they were 17 and 7 years old. The parties therefore agree that 20 points should be assessed for this factor. (20 points.)
5. Age of Victim
The victim of this case was six to seven years old at the time of the commission of the crimes at issue at this hearing. The parties agree that 30 points should be assessed for this factor. (30 points.)
6. Other Victim Characteristics
The victim did not suffer from a mental disability or incapacity or from physical helplessness. The parties agree that no points should be assessed for this factor. (0 points.)
7. Relationship with Victim
The parties agree that defendant and the victim were known to each other. Therefore, no points are assessed for this factor. (0 points.)
Criminal History
8. Age at First Sex Crime
The Board recommended that 10 points be assessed for this factor, as the defendant was less than 20 years of age when the sexual conduct at issue in this case occurred. The People did not offer any further evidence in support of this factor at the hearing.
a. Statutory Interpretation
It is questionable whether factor 8 may properly be applied in this case. The statute, in Correction Law § 168-Z (5) (a) (v), refers to “the age of the sex offender at the time of the commission of the first sex offense” as one of the “criminal history fac *478 tors” to be examined in each case. Similarly, the Guidelines list this fact under the section relating to “Criminal History,” and not under the category for the “Current Offense.” It seems, therefore, that when viewed in context, factor 8 is meant to address the offender’s prior history, and not, as was done in this case, the offender’s age at the time of the instant crime. Had the latter interpretation been intended, this factor would likely have appeared in the category of the Guidelines relating to “Current Offense.”
Furthermore, in discussing another of the Guidelines’ criminal history factors (factor 9), decisional law has generally recognized that the prior misconduct is appropriately considered, because the current offense demonstrated that the defendant had resumed his earlier aberrant behavior. (People v Moore, 1 AD3d 421 [2d Dept 2003] [defendant’s prior youthful offender adjudication could be used to assess his likelihood of reoffending at a SORA hearing]; People v Dort, 18 AD3d 23 [3d Dept 2005], lv denied 4 NY3d 885 [2005] [prior juvenile delinquency adjudication could be used in a SORA risk assessment]; People v Vite-Acosta, 184 Misc 2d 206, 209 [Sup Ct, Bronx County 2000] [explaining decision to consider prior youthful offender adjudication under factor 9 on the ground that “a repeat offender has elected to cast away his youthful offender fresh start”].)
Defendant Jusino, however, as contrasted with defendants in the cases just cited, has no prior (or subsequent) sexual misconduct or offenses of any kind for this court to include. This defendant was 13 years old at the time of the first act of sexual misconduct, which was part of the single course of continuing conduct charged in this case. As defendant has had no prior history of sexual misconduct, and is not a person whose instant crime was foretold by a previous act of misconduct while a youth, in this court’s view, factor 8 is misapplied as to him, and the Board’s assessment of 10 points should be rejected.
b. Board’s Application
Even were it the case that factor 8 is properly applied to a defendant having no prior history of sexual misconduct, the Board’s application of it to ascribe 10 points to this particular defendant is not sustainable on this record. The Commentary states: “The offender’s age at his first sex crime is a factor associated with recidivism: those who offend at a young age are more prone to reoffend.” (Commentary at 13.) The Commen *479 tary cites four different social science articles as support for this proposition.[10]
This court has reviewed the articles cited in the Commentaries for this factor.[11] In Adolescent Sex Offenders, by Davis and Leitenberg (court exhibit 4), which discusses the 1981 study by Groth and Loredo cited by the Board, the authors found that recidivism rates among adolescent sexual offenders is lower than recidivism rates in adult sexual offenders, but indicated that, as of their writing in 1987, “the research conducted to date has many large gaps . . . [and] is still in an early stage.” (Court exhibit 4 at 425.) It also states that recidivism rates of 10% for adolescent sexual offenders who receive treatment is encouraging. The article also mentions that adolescent sex offenders often have a history of being physically and sexually abused and may be just engaging in a reenactment of their own abuse. Notably, in this case, defendant Jusino was found to have been the victim of sexual abuse and to likely have been reenacting what had happened to him. (See court exhibits 8, 9, 13.)
In Resistance to Treatment of Adolescent Sex Offenders, a 1989 article (court exhibit 3), McConaghy indicates that little is known about adolescent sex offenders and their response to treatment. The article also notes that the few studies which had been done at the time it was written reported that true recidivist sex offenders begin their aberrant behavior in adolescence and repeat it in adolescence with other victims. Clearly, that did not happen with this defendant. There were no repeat offenses and no additional victims.
*480 In Sexual Assault in Society: The Role of the Juvenile Offender (court exhibit 2), Barbaree notes that as of 1993 clinicians had had very limited success in predicting sex offenders’ recidivism.
Characteristics and Typologies of Sex Offenders (court exhibit 6) by Schwartz, is a chapter in a book entitled The Sex Offender. This writing is premised on older studies dating from 1938 through 1980. The section called “Factors Related to Age” relies on a study by Waggoner and Boyd, who published their article in the American Journal of Orthopsychology in 1941, and found that juvenile sex offenders establish a pattern of deviate behavior between the ages of 10 and 16. Dr. Schwartz indicates that the Waggoner study referred to a sample group of regressed or preferential pedophiles, who represent a significant percentage of sex offenders. This court notes that the study relied upon is more than 60 years old, and the group being studied were sex offenders with established patterns of deviate sexual behavior.
This review of the social science articles cited by the Board in the Commentary on factor 8 demonstrates that the basis for the Board’s assessment of points against the defendant under this category cannot withstand analysis, for several reasons. First, these articles base their findings largely on studies which are decades old. (Court exhibits 3, 4, 6.) One of them actually cautions reliance on its findings, with the caveat that the research on recidivism among sex offenders is still in the early stages. (Court exhibit 4.) The most recent of the articles notes that as of 1993, researchers were having limited success predicting patterns of recidivism. (Court exhibit 2.) Such inconclusive findings, upon which the Board here places sole reliance in assessing points under factor 8, have limited predictive value today for suggesting that Mr. Jusino (or any sex offender) is at “high risk of repeat offense,” as that term is used in Correction Law § 168-Z (5) (a). The articles relying on these studies therefore have a diminished utility for the instant SORA risk assessment analysis.
Second, where the articles make connections between the age of the offender as adolescent at first offense and the likelihood of reoffense, other behavior is also observed, such as recurrence of the offending behavior with multiple victims during adolescence, or patterns of behavior which facilitate reoffense. (See generally, court exhibit 6 at 3-7.)
Those behaviors have never been observed in this case. Throughout the more than seven years since this action was *481 commenced, defendant has never reoffended. Serious as the instant offenses were, they were committed by defendant against a single victim, in one particular setting, and have never been replicated by him, either as an adolescent or as an adult. Furthermore, defendant’s behavior while on interim supervision and probation supervision by this court never involved high-risk activities, such as loitering at playgrounds or engaging in other behavior which would afford him the opportunity to be around young boys in unsupervised settings. To the contrary, while he was at liberty in this case, defendant adhered to the order of protection, and insured that he would have no further contact with the victim or his family by moving out of his apartment building. He voluntarily participated in psychotherapy at the Manhattan Behavioral Health Center for approximately 21!z years (court exhibit 10), and enrolled and successfully participated in sex offender treatment at NYPI for three years. (Court exhibits 9, 11, 14.) He also developed a romantic relationship with a young woman from his own peer group. Once incarcerated, defendant successfully completed the Gowanda Correctional Facility’s Sex Offender Program, as well as its Aggression Management Program. (Court exhibit 17.) Thus, the studies’ conclusions about recidivism of individuals who first commit sex offenses as adolescents appear to involve individuals who engage in patterns of high-risk behavior, and do not appear to apply to Mr. Jusino, who assiduously avoided such behaviors and instead participated in treatment designed to forestall any recurrence of them.
Third, the Board uncritically relies on these articles and applies their findings, apparently universally, to any offender whose first sex offense was committed before the age of 20 to reach its conclusion of a high risk of reoffense. The Board’s recommendation constitutes a mere mechanical exercise, applied without any examination of the case at hand. The Commentary makes clear, however, that individualized attention to all relevant factors is preferable to a rote assessment of factor points. (Commentary at 2-3 [“the guidelines should eschew per se rules and . . . risk should be assessed on the basis of a review of all pertinent factors . . . Such an individualized approach is also mandated by the federal Violent Crime Control and Law Enforcement Act of 1994 . . . , with which the Legislature intended the Board to comply”] [citations omitted].)
For example, several of the groups studied in the articles consisted of individuals who were known as established deviate *482 sexual offenders and pedophiles. (See, e.g., court exhibit 6 at 3-7.) The Board applies these studies here, giving absolutely no consideration to the fact that this defendant was tested and repeatedly examined by trained forensic clinicians who consistently found that he was not a pedophile.
While at NYPI, he was examined by Mary Vince, M.D. and by Meg Kaplan, Ph.D., the latter of whom has been recognized as an expert in the field of youthful sexual offenders by both the People and the Board. The two psychometric tests given to defendant by Drs. Vince and Kaplan demonstrated that defendant displayed no interest in having sex with children (court exhibits 9, 11, 14). Defendant was also twice evaluated by social workers and a supervising psychiatrist at the court’s Forensic Psychiatry Clinic at Bellevue Hospital, first in July 1999 (court exhibit 7 [Rabe report]), and again in November 2001 (court exhibit 13 [Rapaport report]). These reports, while finding that Victor Jusino both reported having been sexually abused as a child and that he engaged in sexual abuse of a child as charged in the indictment in this case, failed to diagnose him as having any sexual interest in children. To the contrary, the Rabe report stated: “His behavior appears related to his own history of sexual abuse rather than to a pattern of sexual attraction to young boys.” (Court exhibit 7 at 3.) The Rapaport report opined: “His behavior appears to be related to the abuse he suffered rather than a[n] on-going attraction to young children.” (Court exhibit 13 at 5.)
Therefore, on the facts of this case, and because the People have presented no evidence to the contrary, I find by clear and convincing evidence that, even were it appropriate to ascribe points under this criminal history factor to individuals being assessed for their first, and only, sex offense, the Board’s assessment of points under factor 8 against Mr. Jusino is not supported by the record in this case. The sole fact that defendant committed these offenses while aged 13 to 17 cannot, based on the inconclusive research cited by the Board, be fairly characterized as “indicative of a high risk of repeat offense.” (Correction Law § 168-/ [5] [a].) Assuredly, the mere citation of the articles does not, on this record, constitute “clear and convincing evidence” warranting an assessment of 10 points. (Correction Law § 168-n [3]; see People v Dort, supra.)
Moreover, the multiple examinations of defendant which have been made by professionals in the behavioral sciences and law enforcement fields demonstrate by clear and convincing evi *483 dence that the factual basis underlying this risk factor (prior early offense and established high risk or offending behavior patterns) is absent in his case, and indeed, is more than rebutted by their findings that he presents a very low risk of reoffending. In his particular circumstance, where defendant’s sole crime against a victim began as a single course of conduct shortly after defendant’s own experience as a victim of child molestation; where the examining experts uniformly agreed that he is not a pedophile; where he has successfully completed pre- and postincarceration sex offenders’ treatment; and where he has shown no sign of reoffending during the 772 years since his arrest, defendant has demonstrated that the risk of his recidivism is remote, despite the onset of the behavior before age 20.
Accordingly, no points are assessed for this factor. (0 points.)
9. Number and Nature of Prior Crimes
The parties agree that the defendant has no previous criminal history. Accordingly, no points are assessed for this factor. (0 points.)
10. Recency of Prior Sex Crime
Again, as the parties agree that the defendant never previously committed a sex crime, no points are assessed for this factor. (0 points.)
11. Drug or Alcohol Abuse
The Board recommends that 15 points be assessed against the defendant under factor 11 for having a history of drug or alcohol abuse. Its case summary says only the following on this issue: “This offender has made admissions to using both marijuana and alcohol and is therefore scored for a history of alcohol and drug abuse” (emphasis added).
In support of an assessment under this factor, the People rely solely on this brief statement by the Board. They do not contend, nor does any evidence in the long record of this case indicate, that Jusino was abusing, or even using, drugs or alcohol at the time of the instant offenses. The defendant vigorously disputes any basis for an assessment in this category, pointing out that he was never referred to substance abuse treatment during his four years of incarceration in state prison.
The Commentary explains the basis for the category as follows:
“Alcohol and drug abuse are highly associated with sex offending . . . The literature indicates that use *484 of these substances does not cause deviate behavior; rather, it serves as a disinhibitor and therefore is a precursor to offending . . . The guidelines reflect this fact by adding 15 points if an offender has a substance abuse history or was abusing drugs and or alcohol at the time of the offense. The category focuses on the offender’s history of abuse and the circumstances at the time of the offense. Is [sic] not meant to include occasional social drinking.” (Commentary at 15 [citations omitted and emphasis added].)
With respect to a history of substance abuse, the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (American Psychiatric Association 2004) (DSM-IV-TR), which is universally recognized as the leading authority on mental health disorders, states:
“The essential feature of Substance Abuse is a maladaptive pattern of substance use manifested by recurrent and significant adverse consequences related to the repeated use of substances. In order for an Abuse criterion to be met, the substance-related problem must have occurred repeatedly during the same 12-month period or been persistent.” (DSM-IV-TR at 198.)
The record in this case does not support a finding that defendant has had a history of substance abuse, under either of these definitions of the term. In fact, the only datum upon which the Board could have based such a finding appears to be the statement contained in the New York City Department of Probation presentence investigation report of November 29, 2001 that “in the last PSI Report, the defendant did indicate that he did have a history of using marijuana and alcohol.” (Court exhibit 15 at 9.) The previous presentence investigation report prepared on July 16, 1999, however, makes no mention of any use of substances by defendant. (Court exhibit 8.) Examination of the original prepleading investigation report in the case reveals the following statement by the same supervising probation officer who conducted the July 16, 1999 interview: “The defendant has no drug history except for light usage of alcohol.” (Court exhibit 18 [NY City Dept of Probation PrePleading Investigation Report, dated Oct. 21, 1998].)
The findings of the other examiners on this issue are consistent with this last statement. Credentialed Social Worker Jennifer Rabe, who examined defendant at the Supreme Court’s *485 Forensic Psychiatry Clinic on July 2, 1999, stated: “He denied the use of drugs, and stated he drinks a little alcohol at parties.” (Court exhibit 7 at 3.) The subsequent report by her colleague in that office, Jennifer Rapaport, C.S.W, upon examining defendant in November 2001, stated: “Mr. Jusino said he tried alcohol for the first time at the age of seventeen. He explains he only drinks on special occasions. The defendant stated he tried marijuana but has never let it become a habit. He denied trying any other type of substance.” (Court exhibit 13 at 4.) And when examined by two psychiatrists at the court clinic to determine his fitness for trial in June 1998, defendant denied any history of alcohol or drug abuse. (Court exhibit 19 [examination pursuant to CPL article 730 by Howard Owens, M.D. and Myles Schneider, M.D., dated June 25, 1998].)
Furthermore, as previously noted, defendant had undergone years of psychotherapy and counseling prior to his incarceration, with regular reports on his progress being made to the court and others. At no time was it ever reported that any of the clinicians perceived a pattern or history consistent with substance abuse, as opposed to mere social use. The People offer no evidence to the contrary.
Finally, the New York State Department of Correctional Services has confirmed defendant’s claim that upon evaluating defendant for placement in appropriate treatment programs while incarcerated it found no need to refer him to any substance abuse treatment programs. (Court exhibit 17 [Riverview Correctional Facility letter and report, dated Nov. 1, 2005, at 1].)
In a recent case, the Appellate Division, Third Department, acting in its fact-finding capacity, rejected the conclusion of the Board and the nisi prius court that an offender should be assessed points for a history of substance abuse, based on a lesser showing than that proffered by defendant Jusino in this case. In People v Arotin (19 AD3d 845 [3d Dept 2005]), the Court found a claim of a history of substance abuse insufficiently established, and reduced the offender’s risk assessment level accordingly, where a single assessment by a psychologist who had dealt directly with the defendant in prison had reported no pattern of substance abuse.
Similarly, in this case, the conclusory statement by the Board that defendant has admitted to “using both marijuana and alcohol” would not, without more, establish, by clear and convincing evidence, a “history of abuse,” as distinguished from “occasional social [use],” as described in the portion of the *486 Commentary (at 15) quoted above. Neither would it, in this court’s view, support a finding of substance abuse as defined in the DSM-IV-TR.
As occurred in Arotin, the claim of a substance abuse history in this case is actually refuted by clear and convincing, detailed evidence, here provided by at least five clinical and forensic professionals responsible for assessing defendant’s mental health condition over a period of seven years.
Accordingly, the People have failed to meet their burden of showing by clear and convincing evidence that alcohol or drug use contributed to the commission of the crimes or that the defendant has a history of drug or alcohol abuse. Therefore, no points are assessed for this factor. (0 points.)
Post-Offense Behavior
12. Acceptance of Responsibility
It is uncontested that defendant has accepted responsibility for his crimes. He has repeatedly expressed remorse and regret for his actions. Indeed, at the time of this court’s original sentencing of defendant, he expressed remorse and apologized to the victim and his family. As a condition of his probationary sentence, Mr. Jusino wrote three 500-word essays for this court in which he acknowledged his wrongdoing, examined the consequences of his behavior for the victim and for himself, and expressed remorse and regret. He also took responsibility for his actions and expressed remorse to Dr. Vince in the sex offender treatment program at NYPI, and also reportedly “showed great remorse” during his examination by Jennifer Rapaport, C.S.W., and the supervising psychiatrist. Additionally, the July 16, 1999 presentence investigation report of the New York City Department of Probation also indicated that the defendant showed remorse for his actions. (Court exhibit 8.) Therefore, no points are assessed for this factor. (0 points.)
13. Conduct while Confined/Supervised
The parties agree that defendant’s postoffense conduct has been satisfactory. While at liberty during the pendency of his case and while on probation for two years, defendant complied with the order of protection, had no involvement with law enforcement, sought and participated in treatment, earned his GED, was gainfully employed, found an age-appropriate girlfriend and complied with the conditions imposed by this court and the Probation Department.
*487 Since he has been incarcerated, defendant has incurred no serious disciplinary infractions,[12] and has continued to undergo treatment by attending intensive sex offender (six months) and aggression management (two months) counseling. He has also participated in, and advanced through, several vocational training programs, and is currently participating in an acceptable manner in a work assignment. (Court exhibit 19 at 1.)
Therefore, no points are assessed for this factor. (0 points.)
Release Environment
14. Supervision
Upon his release from prison, it is anticipated that defendant will be supervised by the Division of Parole under specialized conditions until he reaches the maximum expiration date of his sentence on December 3, 2007. Defendant’s counselor at River-view Correctional Facility has advised the court that defendant has recognized and accepted the importance of such supervision. (See court exhibit 17.) Therefore, no points have been assessed for this factor. (0 points.)
15. Living/Employment Situation
The parties agree with the Board that no points should be assessed for this factor, as appropriate support has been arranged for defendant on his reentry into the community. The court concurs that no points should be assessed for this factor. (0 points.)
C. Risk Level Determination
1. Establishment of Presumptive Risk Level
At a SORA hearing, the People bear the burden of establishing the factors supporting the proposed risk level by clear and convincing evidence. (Correction Law § 168-n [3]; Doe v Pataki, 3 F Supp 2d 456 [SD NY 1998]; People v Arotin, supra; People v Dort, supra; People v Brown, 7 AD3d 831 [3d Dept 2004].) “Case summaries often satisfy this burden . . . , reliable hearsay can be used (see Correction Law § 168-k [2]; § 168-n [3]), and facts proven at trial or at a plea are ‘deemed established by clear and convincing evidence’ (Correction Law § 168-n [3]) . . . .” (People v Arotin, supra at 847.)
The responsibility for the final assessment of factor values and the overall determination of a defendant’s sex offender *488 level lies with the court, however, and while recommendations of factor assessments by the Board may be helpful, a court is not constrained by them. (People v Dorato, 291 AD2d 580 [3d Dept 2002]; Matter of Vandover v Czajka, 276 AD2d 945 [3d Dept 2000]; Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891 [4th Dept 1998].) The court may, in the exercise of its discretion, depart from that recommendation based upon facts and circumstances which appear in the record. (People v Douglas, 18 AD3d 967, 968 [3d Dept 2005], lv denied 5 NY3d 710 [2005].) Indeed, where hearsay information in the Board’s case summary is not supported by the record and its reliability is not independently verified, an assessment based on such information may be rejected, as not meeting the clear and convincing evidence standard. (People v Brown, supra.) Moreover, the Guidelines are just that: factors which may serve as useful guides for the court as it assesses the offender’s risk of reoffending. To the extent they are inapplicable in a given case, they should not control the court’s decision.
Here, the Board’s recommendation of a level three risk assessment was not supported by clear and convincing evidence which demonstrated either that defendant’s age at the time of this offense places him at high risk for reoffense, or that he has a history of substance abuse which would increase his likelihood of recidivism. To the contrary, the evidence at the hearing provided clear and convincing evidence that points were incorrectly assessed against the defendant under both factors 8 and 11. Accordingly, based upon the facts established by clear and convincing evidence at the hearing, defendant’s total score using the risk assessment instrument is 85, placing him in the lower end of the range of a presumptive level two sex offender.
2. Departure from Presumptive Risk Level
A departure from a defendant’s presumptive risk level calculated after consideration of all of the risk factors is only warranted when “there exists an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the guidelines.” (Commentary at 4; Matter of O’Brien v State of N.Y. Div. of Probation & Correctional Servs., 263 AD2d 804 [3d Dept 1999], lv denied 94 NY2d 758 [1999].)
In this case, at least three reasons exist for this court to depart downwardly from defendant’s presumptive level two risk assessment. First, Victor Jusino has been repeatedly diagnosed by experts and found not to demonstrate any sexual attraction to children. Notably, his treating clinicians from the New York *489 Psychiatric Institute Sexual Behavior Clinic (including Dr. Kaplan, upon whose expertise the People relied at that time, and Dr. Vince, defendant’s treating psychiatrist), as well as the court’s forensic social workers and psychiatrist at Bellevue Hospital, opined repeatedly over a two-year period of observations and interviews that defendant was not a pedophile. (Court exhibits 7, 9, 11, 13, 14.) Prior to the original sentence, both of these agencies, as well as the Department of Probation and defendant’s psychotherapist, noted defendant’s cooperation with their requirements, cited his positive prospects for rehabilitation, and recommended that he continue community-based treatment. (Id.; court exhibits 8, 10.) Three different clinical teams evaluated defendant and found that neither the community nor the complainant was in need of protection from defendant such that his removal from the community was necessary. (Court exhibits 7, 9, 13.) The Department of Probation recommended that Jusino receive youthful offender treatment and a probationary sentence. (Court exhibit 8.) Implementation of SOBA to assure the community’s protection appeared then, as it does now, unwarranted. These affirmative findings that Jusino is not a pedophile are not adequately considered by the Guidelines.
Secondly, as discussed above in section II (B) (8), this defendant’s conduct while awaiting the resolution of his case and while on probation demonstrated that he had undertaken numerous affirmative steps to modify his behavior. While on probation and before his incarceration, defendant, in addition to continuing his clinical treatment, which was closely monitored by this court on a bimonthly basis for a period of 18 months, reported regularly to his probation officer, furthered his education by attaining his GED, found gainful employment, conducted himself in a law-abiding manner, adhered to the order of protection and found age-appropriate social companions. During his incarceration, defendant’s disciplinary record was, as the Board and the People concede, satisfactory, and without any serious infractions. With the exception of two relatively minor incidents occurring during his first year of incarceration (supra n 12), defendant conformed to the rules of the institution, while participating in clinical treatment and inmate programs, further demonstrating his desire to rejoin and conform to the norms of society. He successfully completed sex offender treatment and anger management programs, as well as several educational and vocational training classes.
*490 Here, defendant was at liberty in the community for 3Vs years, during which time he assumed responsibility for his own rehabilitation and made significant progress prior to being reincarcerated. These mitigating circumstances are not adequately considered under factor 13, which merely categorizes the offender’s behavior as satisfactory, unsatisfactory, or unsatisfactory with sexual misconduct. The degree to which this defendant has been motivated to progress, and has progressed, in his rehabilitation and conformity of his conduct to society’s norms, is not adequately considered by the Guidelines.
Thirdly, the Guidelines do not afford any consideration at all of the circumstance of an adolescent offender who reenacts his own victimization by abusing a younger child, as occurred in this case, when Victor Jusino, having been the victim himself of sex abuse while aged 12 to 13, then, at age 13, began to abuse the victim in this case.[13] This phenomenon is well recognized by clinicians, as this case demonstrates, and is widely reported in the literature (see, e.g., court exhibits 5, 6), where such offenders are sometimes labeled “abuse reactive” children. (Court exhibit 6 at 3-4.) The fact that in this case, the abuse was found by several clinicians to be the direct and immediate outgrowth of defendant’s own experience as a victim, and not reflective of an underlying sexual attraction to young children, is a mitigating circumstance not taken into account by the Guidelines.
In People v Santiago (20 AD3d 885 [4th Dept 2005]), defendant was a 21 year old who engaged in sexual intercourse with another person less than 17 years of age and was convicted of rape in the third degree (Penal Law § 130.35 [2]). The County Court found the defendant to be a level three sex offender based on the risk factor analysis in the risk assessment instrument. On defendant’s appeal, the Court held that a downward departure to a level two risk was appropriate, based upon clear and convincing evidence in the record. Specifically, the Court there found that defendant had no prior convictions for sex crimes, that the victim was a willing participant, and was “only a few months from the age of 17.” (Santiago at 886.) Further, defendant had been unable to complete his sex offender treatment because he was discharged from custody. These were “mitigating factor[s] of a kind, or to a degree, not otherwise adequately taken into account by the guidelines.” (Commentary at 4.)
*491 In Santiago, as in the instant case, it is clear that where the presumptive risk level based on the Guidelines does not reflect a particular defendant’s potential for repeat offending, a departure from that level is warranted. Here, in view of the clinicians’ unanimous opinion that defendant does not appear to be a pedophile, and in consideration of the defendant’s considerable progress at rehabilitating himself over the past seven years, as well as his own victimization, it seems counterproductive and detrimental to defendant Jusino’s efforts to reenter society as an adult to provide the public with access to information concerning his offense, especially since, by every measure, he appears unlikely to reoffend. Defendant’s clinical evaluations and his consistent record of rehabilitation have demonstrated to this court by clear and convincing evidence, the existence of mitigating factors of a kind, and to a degree, not adequately considered the Guidelines and which warrant departure from the defendant’s presumptive risk level. (Commentary at 4; see People v Mount, 17 AD3d 714 [3d Dept 2005]; People v Guaman, 8 AD3d 545 [2d Dept 2004]; Matter of O’Brien, supra.) This court therefore designates the defendant a level one sex offender.
III. Conclusions of Law
The court finds that defendant is a sexually violent offender, which requires lifetime registration. This court further finds that clear and convincing evidence has established that defendant is a presumptive level two sex offender, but that defendant has adequately provided clear and convincing evidence of mitigating factors not adequately considered by the Guidelines which warrant a downward departure to a level one determination.
[Portions of opinion omitted for purposes of publication.]

. Defendant’s plea included one count of endangering the welfare of a child (Penal Law § 260.10) for which he was sentenced to one year in jail and other charges for which he was adjudicated a juvenile delinquent. Those charges are not the subject of this SORA proceeding.

. Correction Law § 168-Z establishes a Board of Examiners of Sex Offenders, consisting of five members who are appointed by the Governor. The Board is responsible for the development of “guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to public safety.” (Correction Law § 168-Z [5].) The Board applies these guidelines and makes a recommendation to the court regarding the risk level to be assigned to a sex offender. (Correction Law § 168-Z [6].)

. Sex offenders are denominated by levels one, two or three, with increasing community notification for higher risk levels. Only local law enforcement agencies are notified of a level one offender’s location in the community. Local law enforcement agencies may distribute to any entities having vulnerable populations a picture of a level two offender, along with the offender’s address and other information. Level three offenders are subject to the same community notifications as are level two offenders, and they are also included in publicly accessible databases. (See Correction Law § 168-Z [6].)

. A more detailed account of the factual and procedural background of the case is set forth in this court’s earlier decision in the case, People v Victor J. (187 Misc 2d 749 [Sup Ct, NY County [2000], mod and remanded 283 AD2d 205 [1st Dept 2001], lv denied 96 NY2d 942 [2001]).

. It is uncontested that defendant’s date of birth is March 23, 1981. The Board’s reference in its case summary to the misconduct having begun when defendant was 17 years old is clearly erroneous. (See Victor J., supra, and n 6, infra.)

. The conduct underlying count one, charging defendant with course of sexual conduct against a child in the first degree, was committed from on or about February 1, 1995 to March 31, 1998. The act underlying count two, charging first degree sodomy, was committed from on or about February 1, 1995 to March 31, 1995. The act underlying count three, charging first degree sodomy, was committed from on or about January 1, 1995 to March 31, 1995. The act underlying count four, charging first degree sodomy, was committed from on or about January 1, 1997 to March 31, 1997. The act underlying count five, charging first degree sodomy, was committed from on or about December 1, 1996 to December 31, 1996. The conduct underlying count six, charging endangering the welfare of a child, was committed on or about February 1, 1995 to March 31, 1998.

. As more fully explained in Victor J., on the date of defendant’s guilty plea, the People made an off-record statement to the court and defense counsel *473 that if it were determined by independent clinical evaluation that prior to the instant incidents, defendant, himself, had been the victim of sexual molestation as a child, the People would likely consent to youthful offender adjudication in the case.

. The five clinical examiners reported that defendant had suffered the abuse at ages 12 and 13, months prior to the commencement of his abuse of the victim in this case. The sixth interviewer, the supervising probation officer, noted that the abuse suffered by the defendant commenced in 1996, which would have been when defendant was 14 to 15 years of age. That notation appears to have been erroneous, however, in the context of both the uniform revelations of the abuse made by the defendant to the other five interviewers, and the conclusions drawn by several of them that defendant’s abuse of the boy in this case appears to have been triggered by his own victimization. The social science literature supports this conclusion as well. (See discussion infra, section II [B] [8]; Victor J., supra.) In any case, the record is clear that defendant’s own experience as a victim, and his abusive conduct toward the boy in this case, both occurred before defendant reached the age of majority at wbich he could be held criminally responsible for his actions.

. Defendant’s written waiver of Ms appearance, dated October 4, 2005, has been marked as court exMbit 1 for purposes of this hearing.

. The articles cited have been marked by this court as exhibits at the hearing, as follows: H.E. Barbaree, S.M. Hudson, and M.C. Seto, Sexual Assault in Society: The Role of the Juvenile Offender, in H.E. Barbaree, WL. Marshall, S.M. Hudson (editors), The Juvenile Sex Offender (New York: The Guilford Press, 1993) (court exhibit 2); N. McConaghy, A. Blaszcynski, M. Armstrong, and W Kidson, Resistance to Treatment of Adolescent Sex Offenders, 18 Archives of Sexual Behavior 97, 97-107 (1989) (court exhibit 3); G.E. Davis and H. Leitenberg, Adolescent Sex Offenders, 101 Psychological Bulletin 417, 417-427 (1987) (court exhibit 4) (reviewing N. Groth and C.M. Loredo, Juvenile Sexual Offenders: Guidelines for Assessment, 25 IntT J Offender Therapy & Comp Criminology 31, 31-39 [1981] [the Groth and Loredo article was apparently listed incorrectly in the Guidelines bibliography as being found in 25 Psychological Bulletin 31, 31-32 (1987) and has not been located by this court]); B.K. Schwartz, Characteristics and Typologies of Sex Offenders, in 1 B.K. Schwartz and H.R. Cellini (editors), The Sex Offender (Corrections, Treatment and Legal Practice) (New Jersey: Civic Research Institute, 1995) (court exhibit 6).

. (See court exhibits 2, 3, 4.) Although this court was unable to locate the Groth and Loredo article, it found that it was discussed in the article by Davis and Leitenberg (court exhibit 4).

. In March 2002 defendant committed a movement violation and in July 2002 he committed a smoking violation. Both were tier 2 infractions, and did not result in loss of good time or keeplock penalties.

. In fact, most of the conduct charged in this case occurred when defendant was ages 13, 14 and 15, and was not criminally responsible for his actions.